# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ERIN LOWTHER, | § | |
| | § | |
| Defendant-Below, | § | No. 102, 2014 |
| Appellant, | § | |
| | § | Court Below – Superior Court |
| v. | § | of the State of Delaware in |
| | § | and for New Castle County |
| STATE OF DELAWARE, | § | |
| | § | Cr. I.D. 1304021737 |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: October 22, 2014
Decided: November 6, 2014

Before **STRINE**, Chief Justice; **HOLLAND**, and **VALIHURA**, Justices.

Upon appeal from the Superior Court of the State of Delaware.
**AFFIRMED**.

Misty A. Seemans, Esquire, Office of the Public Defender, Wilmington, Delaware, Attorney for Defendant-Below, Appellant.

Karen V. Sullivan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware, Attorney for Plaintiff-Below, Appellee.

**HOLLAND**, Justice:

Erin Lowther ("Lowther") was arrested on April 24, 2013, following an altercation with her sister-in-law, Trisha Lowther ("Trisha"). On December 9, 2013, the New Castle County grand jury issued a superseding indictment, charging Lowther with Assault in the Second Degree, Terroristic Threatening and Offensive Touching. On January 16, 2014, a two-day jury trial began. Lowther moved for a judgment of acquittal on the Terroristic Threatening charge. The Superior Court denied the motion. The jury found Lowther guilty of Assault in the Second Degree and Terroristic Threatening, but not guilty of Offensive Touching. Lowther was sentenced to six years at Level V incarceration, suspended for eighteen months at Level III probation for Assault in the Second Degree and one year at Level V incarceration, suspended for one year at Level III probation for Terroristic Threatening.

Lowther has raised two arguments in this direct appeal. First, Lowther contends that the evidence presented during the State's case-in-chief was not sufficient to allow the jury to find Lowther guilty of Terroristic Threatening. According to Lowther, the State did not present sufficient evidence that her threat to "f***ing kill" Trisha was a "true threat". We have concluded that, viewing the evidence in the light most favorable to the State, a rational jury could conclude beyond a reasonable doubt that Lowther had a subjective intent to

threaten Trisha when she said she would "f*** kill her." Therefore, the trial judge properly denied Lowther's motion for a judgment of acquittal.

Second, she contends that the Superior Court committed plain error in instructing the jury on the charge of Terroristic Threatening. We have determined that, when read as a whole, Superior Court's instructions were reasonably informative, not misleading and allowed the jury to perform its duty.

Accordingly, both of Lowther's arguments are without merit. Therefore, the Superior Court's judgment must be affirmed.

**Facts**

On the evening of April 23, 2013, Lowther picked up her brother, Michael Lowther ("Michael"), from work in West Grove, Pennsylvania. Lowther was approximately twenty minutes late picking up Michael and the two began to argue on the way home. The two arrived at Michael's home in Newark, Delaware, and the argument escalated into a physical altercation.

Upon arriving at Michael's home, Lowther went into the kitchen and grabbed a pair of scissors and threatened Michael with them. Lowther then put down the scissors and grabbed a broom and broke it over Michael's back. Lowther next entered the living room, grabbed a cane that belonged to Michael's wife, Trisha, and began to hit Michael on the back with it. Lowther then turned to Trisha and started to hit her with the cane. Lowther then got on top of Trisha and

started hitting Trisha with her hands. Lowther eventually stopped and went upstairs.

Michael called the police. Shortly thereafter, Officer John O'Hara ("Officer O'Hara") of the New Castle County Police Department arrived at Michael's home. After briefly speaking with Michael, Officer O'Hara went inside Michael's home and asked Lowther to come downstairs. Officer O'Hara then handcuffed Lowther and placed her in the back of a patrol car. Trisha was transported to the hospital by ambulance.

Lowther complained of stomach and vaginal pain and was also transported to the hospital. While Lowther was in the police car, she stated that if she saw Trisha at the hospital, she was going to "F*** kill her." At the hospital, Officer O'Hara read Lowther her *Miranda* rights and asked her questions. Lowther repeatedly told the officer to, "go f*** yourself."

**Motion for Judgment of Acquittal on Terroristic Threatening**

This Court reviews a trial judge's denial of a motion for judgment of acquittal *de novo*.[1] This Court must determine "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt of all the elements of a crime."[2]

---

[1] *Flonnory v. State*, 893 A.2d 507, 537 (Del. 2006) (citing *Priest v. State*, 879 A.2d 575, 577 (Del. 2005)).

[2] *Id.*

Under 11 *Del. C.* § 621, "[a] person is guilty of terroristic threatening when that person . . . to commit any crime likely to result in death or in serious injury to a person or property."[3] This Court has held that there are three elements to meet the statutory requirements of 11 *Del. C.* § 621: "(1) a threat, (2) to commit a crime, (3) likely to result in death or 'serious injury' to person or property."[4] This Court has further held that the mental state necessary to commit terroristic threatening is that of a "subjective intent to threaten" the victim.[5]

When determining whether these elements are present, the utterance must not be placed in a vacuum, but rather should be viewed in light of its context and the totality of the circumstances.[6] Furthermore, this Court has noted that § 621 "punishes mere words, because the statute is meant to protect against the fear threats engender."[7] Therefore, "an intent to actually carry out the threat is immaterial."[8]

---

[3] 11 *Del. C.* § 621(a)(1).

[4] *Andrews v. State*, 930 A.2d 846, 853 (Del. 2007) (quoting *Bilinski v. State*, 462 A.2d 409, 413 (Del. 1983)).

[5] *See id.* at 852 (citing *Virginia v. Black*, 538 U.S. 343, 360 (2003)) (noting that the Supreme Court has required an objective test when determining whether speech is unprotected by the First Amendment as a true threat, but further noting that 11 *Del. C.* § 621 applies only to speech made with the subjective intent to threaten).

[6] *See id.* at 851 (quoting *United States v. Kosma*, 951 F.2d 549, 557 (3d Cir. 1991)).

[7] *Id.* at 853.

[8] *Id.* (citing *Allen v. State*, 453 A.2d 1166, 1168 (Del. 1982)).

5

Lowther argues that the State did not present evidence which proved beyond a reasonable doubt that she had the appropriate subjective intent to threaten Trisha at the time she made the statement. In doing so, Lowther makes three arguments. First, she argues that when she made the statements, she was handcuffed and in the back of the police car, and therefore, it was impossible for her to have any contact with Trisha, let alone kill her.[9] Second, she argues that there were no facts which indicate that she knew Trisha was going to the hospital.[10] Third, she argues that the statement she made was not one the legislature intended to punish.[11]

Lowther's first argument is without merit. This Court has held that intent to utter the words and intent to threaten the victim is all that is necessary for terroristic threatening.[12] There does not need to be intent to actually carry out the threat.[13] In *Andrews*, this Court explicitly stated:

> [W]e conclude that § 621 requires that the State prove not only that the defendant uttered words that facially threaten serious physical injury or death but also that in uttering them, the defendant intended to threaten the victim. The defendant need not intend to carry out the

---

[9] Appellant's Opening Br. at 7-9 ("First, Lowther was in police custody and handcuffed, making it impossible to have contact with Trisha, let alone kill her at the hospital.").

[10] *Id.* ("Second, at the time, Lowther did not know that Trisha was going to the hospital.").

[11] *Id.* ("Third, Lowther had just been involved in arguments and a physical altercation with her brother and sister-in-law, had been detained and was in pain. She was angry and blowing off steam when she said these words in the presence of a police officer and was out of the presence of the victim.").

[12] *See Andrews*, 930 A.2d at 852-53.

[13] *Id.*

threat, but it is not enough to show only that the defendant merely intended to utter threatening words.[14]

In addition, the statutory language of § 621 does not support Lowther's argument. The text of the statute states, "[t]he person threatens to commit any crime likely to result in death or in serious injury to person or property."[15] The statute criminalizes a threat that is likely to result in death or serious injury, regardless of whether death or serious injury is likely to occur.[16] Lowther's threat was that she was going to kill Trisha if she saw Trisha at the hospital. Accordingly, Lowther's argument that she could not have had contact with, let alone kill, Trisha when she made the statement is meritless because her ability to carry out the threat is immaterial to the analysis.

Lowther's second argument – that there was no evidence suggesting that she knew Trisha was going to the hospital – is also without merit. Again, the intent to actually carry out the threat is not necessary.[17] There only needs to be the intent to utter the words and to threaten the victim.[18] Here, Lowther argues that she did not know Trisha was going to the hospital, and therefore could not have committed the

---

[14] *Id.* at 854.

[15] 11 *Del. C.* § 621(a)(1).

[16] *See Andrews*, 930 A.2d at 853.

[17] *See id.* at 852-53.

[18] *Id.*

threatened act. This argument fails for the same reasons as Lowther's first argument.

Further, when viewing the evidence in the light most favorable to the State, the record reflects that Lowther knew that Trisha was going to the hospital. Officer O'Hara testified that he placed Lowther in a police car outside of Michael's home. Officer O'Hara further testified that Trisha was "being lead [sic] to the ambulance." As a result, the jury could have inferred that Lowther saw Trisha walking to the ambulance and knew that she was being transported to the hospital.

Lowther's third argument is that this type of statement is not within the category of statements that the statute penalizes.[19] In making this argument, Lowther relies on Pennsylvania case law.[20] However, Delaware's terroristic threat statute and Pennsylvania's are not the same. Pennsylvania's analogous statute, 18 *Pa.C.S.A.* § 2706(a)(1), provides: "A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to: (1) commit any crime of violence with intent to terrorize another."[21] On its face, the law seems similar. However, the Pennsylvania's statute includes an official comment indicating that:

---

[19] *See* Appellant's Opening Br. at 7-8.

[20] *Id.* ("Pennsylvania has recognized that spur-of-the-moment statements and statements made in the heat of anger may be exempt from proscription.").

[21] 18 *Pa.C.S.A.* § 2706(a)(1).

> [t]he purpose of [§ 2706] is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience. It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger.[22]

Pennsylvania explicitly acknowledges that threats made in anger are not true threats. Delaware's statute, however, does not include an official comment indicating that spur-of-the-moment comments are exempt from the statute.[23]

Nevertheless, this Court's construction of the statute exempts statements that were not true threats by requiring that the speaker intend to actually make a threat, not merely intend to utter the words.[24] Thus, the question before this Court is whether a rational jury, viewing the evidence in the light most favorable to the State, could find that Lowther had the subjective intent to make a threat – that is to say, Lowther was not acting merely in the heat of passion and making a comment she did not intend to be a threat. Subjective intent to threaten may be proved by showing the defendant intentionally, knowingly or recklessly made a threatening statement.

Lowther argues that she could not have had the required intent to threaten Trisha, in the sense of engendering fear in her, because Lowther made her statement to a police officer when under arrest, when Trisha was not present, and

---

[22] *Id.* at § 2706.

[23] *See* 11 *Del. C.* § 621.

[24] *See Andrews*, 930 A.2d at 853-54.

9

when Lowther supposedly had no reason to believe Trisha would be going to the hospital. But as noted, from the facts presented at trial, the jury had a basis to infer that Lowther knew that Trisha was going to the hospital, not just because Lowther's own statement implied that she suspected that was the case, but because Lowther had beaten Trisha severely and caused injuries in need of treatment. Further, Lowther was sitting in a police car outside of Michael's home at the same time Trisha was led to an ambulance for those injuries, which Lowther was capable of observing.

Moreover, the jury could have inferred that Lowther knew that the police would likely tell Trisha about this statement so that Trisha knew to be wary of Lowther. The jury could also have inferred that the statement, when communicated to Trisha, would frighten her, because Trisha had just suffered a violent attack at Lowther's hands. Based on these facts, a reasonable jury could conclude that Lowther had the subjective intent to threaten Trisha when making her statement.

Lowther's three arguments regarding her motion for judgment of acquittal on the Terroristic Threatening charge are without merit. Accordingly, we hold that the Superior Court properly denied Lowther's motion for a judgment of acquittal.

## Jury Instruction

In reviewing whether the trial judge incorrectly formulated an un-objected to jury instruction, this Court reviews for plain error.[25] Under the plain error standard of review, "[t]he error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[26] Further, plain error is "limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[27]

When reviewing for plain error it is important to note that "[a] defendant is not entitled to a particular instruction, but has an 'unqualified right to a correct statement of the substance of the law.'"[28] A trial judge's instruction will not constitute reversible error if "it is 'reasonably informative and not misleading, judged by common practices and standards of verbal communications.'"[29]

---

[25] *Kostyshyn v. State*, 51 A.3d 416, 419 (Del. 2012) (citing *Probst v. State*, 547 A.2d 114, 119 (Del. 1988); *Dougherty v. State*, 21 A.3d 1, 3 (Del. 2011)).

[26] *Dougherty*, 21 A.3d at 3 (quoting *Turner v. State*, 5 A.3d 612, 615 (Del. 2010)).

[27] *Id.*

[28] *Hankins v. State*, 976 A.2d 839, 841 (Del. 2009) (quoting *Flamer v. State*, 490 A.2d 104 (Del. 1983)).

[29] *Id.*

Lowther argues that the Superior Court erred in instructing the jury on the *mens rea* required for terroristic threatening.[30] The trial court instructed the jury, as follows:

> A person is guilty [*sic*] Terroristic Threatening when:
> The person threatens to commit any crime likely to result in death or serious injury to person or property.
> In order to find the defendant guilty of this crime, you must find that the following elements have been established beyond a reasonable doubt:
> *One:* *The defendant threatened to commit a crime;*
> Two: The threatened crime would likely result in death or serious injury to a person or property.
> And, Three: *The defendant acted intentionally or knowingly.*
> Intentionally means that it was the defendant's conscious object or purpose to threaten to commit a crime likely to result in death or serious injury.
> Knowingly means the defendant was aware he was threatening – he or she, excuse me, was threatening to commit a crime likely to result in death or serious injury.
> The statute imposes criminal liability for the use of words.
> Even if the actor does not intend to actually carry out the threat, the threat itself creates identifiable injuries, e.g., mental distress or panic, that the Criminal Code protects against.
> Thus, the crime is complete when the actor threatens a crime, the commission of which could reasonably entail death or serious injury to the person. Whether the threatened act is completed is immaterial.[31]

---

[30] Appellant's Opening Br. at 11-13 ("The trial court's incorrect statement of the substance of the law in the jury instructions ignores the requirement for the State to prove beyond a reasonable doubt that the defendant has a subjective intent to threaten the alleged victim.").

[31] A27-29 (emphasis added).

Lowther correctly states that § 621 requires a subjective intent to make a threat.[32] In *Andrews*, the State argued that § 621 only required the intent to utter the words, and did not require the intent to threaten the victim.[33] This Court disagreed, stating, "we conclude that § 621 requires that the State prove not only that the defendant uttered words that factually threaten serious physical injury or death but also that in uttering them, the defendant intended to threaten the victim."[34] Lowther contends that the instructions given to the jury did not adequately state the law concerning her subjective intent to make a threat.

In *Andrews*, however, this Court further stated:

> Section 621 does not prescribe the requisite *mens rea* to commit terroristic threatening. 11 *Del. C.* § 251(b) provides that when a statute does not prescribe the *mens rea* required, the State must prove the defendant acted intentionally, knowingly, *or* recklessly.[35]

Accordingly, the issue before this Court is whether there was plain error in the jury instruction because the instruction was inadequate for the jury to consider Lowther's subjective intent to threaten, which may be proved by the State by showing Lowther intentionally, knowingly or recklessly made a threat.

"A trial court's jury charge will not serve as grounds for reversible error if it is 'reasonably informative and not misleading, judged by common practices and

---

[32] *See Andrews*, 930 A.2d at 853-54.

[33] *Id.*

[34] *Id.* at 854.

[35] *Id.* at 853 (citing 11 *Del. C.* § 251(b)) (emphasis in original).

13

standards of verbal communication.'"[36]  The proper focus is whether the jury instructions are adequate to "enable the jury to intelligently perform its duty in returning a verdict."[37]  In making this assessment, the instruction must be reviewed as a whole.[38]

Considering the instruction in its entirety, the jury was properly instructed that they needed to find Lowther had a subjective intent to make a threat, and merely uttering the words or using an objective standard was not enough.  The jury was also instructed that they needed to determine whether Lowther intentionally or knowingly acted.  They were further instructed that the act in question was the threat to commit a crime – not the act of uttering the words.  Accordingly, the record reflects no plain error.

## Conclusion

The Superior Court's judgment is affirmed.

[36] *Dawson v. State*, 581 A.2d 1078, 1105 (Del. 1990) (citing *Flamer*, 490 A.2d at 104).

[37] *Whalen v. State*, 492 A.2d 552, 559 (Del. 1985) (quoting *Storey v. Castner*, 314 A.2d 187, 194 (Del. 1973)).

[38] *McNally v. State*, 980 A.2d 364, 367 (Del. 2009) (citing *Floray v. State*, 720 A.2d 1132, 1138 (Del. 1998)).