NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-1007
_____

HANS SCHEING;
TINA WEBB-SCHEING,
Individually & as H/W,

Appellants

v.

OFFICER CASEY FOUNTAIN, in his individual capacity;
DANIEL ALBANESE, in his individual capacity;
DAVE SCHEPENS; ANDREW WHITMAN, in his individual capacity
_____

On Appeal from the United States District Court
for the District of Delaware
(D. C. Civil Action No. No. 1-15-cv-01028)
District Judge: Honorable Richard G. Andrews
_____

Argued on January 11, 2018

Before: JORDAN, ROTH, <u>Circuit Judges</u> and *MARIANI, <u>District Judge</u>

(Opinion filed: April 24, 2018)


L. Anthony DiJiacomo, III, Esq.   (**ARGUED**)
Matthew B. Weisberg, Esq.
Weisberg Law

_____

* The Honorable Robert D. Mariani, United States District Court Judge for the Middle
District of Pennsylvania, sitting by designation.

7 South Morton Avenue
Morton, PA 19070

Counsel for Appellants


Joseph C. Handlon, Esq.    (**ARGUED**)
Delaware Department of Justice
820 North French Street
Carvel Office Building
Wilmington, DE 19801

Counsel for Appellees

_____

OPINION**

_____

ROTH, <u>Circuit Judge</u>

Hans Scheing appeals the District Court's order, dismissing his malicious

prosecution claims against various Delaware Department of Natural Resources and

Environmental Control (DNREC) employees under Federal Rule of Civil Procedure

12(b)(6).  Because Scheing has failed to state a claim for relief against any defendant, we

will affirm.

**I.**[1]

Scheing installed septic tanks for Delaware Septic Service, LLC—a company

owned by his wife.[2]  On July 22, 2013, Scheing entered into a contract with Frank and

---

** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

[1] The following facts are drawn from the Second Amended Complaint.  App. 15-25.

[2] Scheing's wife, Tina Webb-Scheing, was a plaintiff in the District Court proceedings
but only with respect to the loss-of-consortium claim.  Because the dismissal of that
claim is not at issue on appeal, we refer only to Hans Scheing throughout this opinion.

2

Winifred Vadala, an elderly couple, to replace their failing septic system. That same day, Scheing performed soil testing on the Vadalas' property to determine the type of system to install. As alleged, Scheing informed the Vadalas that he could not begin the installation until he received the soil-test results, which could take several months, and he subsequently provided them with periodic updates. Fifty days later, on September 10, the Vadalas filed a complaint with DNREC alleging that Scheing did not perform any work to fix their septic tank—work that they had paid him to perform.

According to Scheing, upon learning of the Vadalas' complaint, several DNREC employees, David Schepens, Andrew Whitman, and Daniel Albanese, "brought" criminal charges against Scheing, sounding in theft and home-improvement fraud "to advance their careers" and "to benefit" Schepens' son.[3] The son owned a competing septic-service company. Schepens, Whitman, and Albanese then "directed" DNREC Officer Casey Fountain to investigate the Vadalas' complaint.

Fountain met with the Vadalas at their property in September to discuss their complaint against Scheing; the Vadalas informed Fountain that Scheing had performed soil testing but had taken no other actions to fix their septic tank. Fountain called DNREC to inquire whether it had received a soil-test report for the Vadalas' property; no report had been filed with DNREC at that time.

Relying on this information, on October 14, Fountain sought and obtained a warrant to arrest Scheing for home-improvement fraud and theft. Scheing asserts that

---

[3] App. 17-18, ¶¶ 13, 19.

Fountain omitted from the warrant application any reference to the soil test performed on the Vadalas' property.[4]

Scheing received the soil-test report from the expert on October 11. On October 16, the soil-test report was sent to DNREC for approval. The report was time-stamped by DNREC on October 17.

According to Scheing, on October 21, Fountain contacted Scheing and allegedly informed him that "he wanted to 'talk about some contracts'" and that "he did not need a lawyer."[5] Fountain did not advise Scheing that he was under investigation. At the police station, Fountain arrested Scheing. Scheing claims that Fountain had been "directed" to do so by Schepens, Whitman, and Albanese, despite Scheing's protestations of innocence.[6]

In November 2013, the Court of Common Pleas dismissed all criminal charges against Scheing. The defendants nonetheless "sought a grand jury indictment," which resulted in a Delaware grand jury indicting Scheing for theft and home-improvement fraud in January 2014. The defendants' role in procuring the indictment is unclear, but Scheing contends that information "concerning the soil testing . . . was purposefully omitted from the grand jury." [7] In September 2014, the Court of Common Pleas again dismissed all charges against Scheing.

---

[4] The defendants attached a copy of the warrant application to their motion to dismiss, *see* App. 54-58, but we need not consider it because the Second Amended Complaint is deficient on its face. *See* App. 7.

[5] App. 20, ¶ 32.

[6] App. 20, ¶¶ 33, 36.

[7] App. 22, ¶ 46.

In November 2015, Scheing brought a civil action against DNREC and various individuals, seeking, among other things, relief under 42 U.S.C. § 1983 for malicious prosecution, false arrest, and due process violations, and under state law for loss of consortium.  The defendants moved to dismiss, prompting Scheing to file an Amended Complaint with claims against only defendants Schepens, Whitman, Albanese, and Fountain.  The District Court granted the defendants' motion to dismiss the Amended Complaint because Scheing's pleading failed to allege (i) the personal involvement of defendants Schepens, Whitman, and Albanese, and (ii) the absence of probable cause, as required to state a malicious prosecution claim against Fountain.  With leave, Scheing filed a substantively similar Second Amended Complaint in June 2016, maintaining only his claims for malicious prosecution while abandoning his false arrest and due process claims.  The defendants again moved to dismiss for failure to state a claim and on qualified immunity grounds.  In November 2016, the District Court dismissed the Second Amended Complaint in its entirety for largely the same reasons it had dismissed the Amended Complaint.[8]  Scheing appeals.

---

[8] App. 15-23.  In so ruling, the District Court did not address the defendants' alternative argument that they were entitled to qualified immunity.

5

**II.**[9]

The District Court properly dismissed Scheing's Second Amended Complaint

under Rule 12(b)(6).  To state a viable claim for malicious prosecution under 42 U.S.C.

§ 1983, a plaintiff must show that "(1) the defendant initiated a criminal proceeding; (2)

the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding

without probable cause; (4) the defendant acted maliciously or for a purpose other than

bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty

consistent with the concept of seizure as a consequence of a legal proceeding."[10]  Vague

allegations of wrongdoing leveled against all defendants do not suffice because a

government official "is only liable for his or her own misconduct."[11]  Thus, a plaintiff

seeking relief under § 1983 must plausibly allege "with appropriate particularity" that

*each defendant* was personally involved in the purportedly wrongful conduct.[12]  Such a

---

[9] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291.  We exercise plenary review over the District Court's dismissal of Scheing's Second Amended Complaint under Rule 12(b)(6).  *See, e.g.*, *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 131 (3d Cir. 2016).  In conducting our review, we must ignore all legal conclusions, accept all well-pled factual allegations, draw all reasonable inferences in Scheing's favor, and then determine whether the Second Amended Complaint "states a plausible claim for relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d at 131.

[10] *Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016) (quoting *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007)).

[11] *Iqbal*, 556 U.S. at 677; *see Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222-23 (3d Cir. 2015).

[12] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Chavarriaga*, 806 F.3d at 222; *see Iqbal*, 556 U.S. at 676.

showing can be made through sufficiently particular "allegations of personal direction or of actual knowledge and acquiescence."[13]

We conclude that Scheing has not stated a viable malicious prosecution claim against any defendant.[14] Indeed, Scheing fails to adequately allege that defendants Schepens, Whitman, and Albanese were personally involved in the alleged violations of his constitutional rights or that defendant Fountain "influenced or participated" in the decision to initiate criminal proceedings or otherwise acted without probable cause.

## A.

Despite two opportunities to re-plead his claims, Scheing fails to plead particular, non-conclusory allegations sufficient to establish the personal involvement of defendants Schepens, Whitman, and Albanese. Scheing merely alleges that they collectively (i) brought criminal charges against him upon learning that the Vadalas had filed a complaint, (ii) directed Fountain to investigate the complaint, (iii) directed Fountain to arrest Scheing after he obtained a warrant, (iv) sought a grand jury indictment, and (v) took these measures to advance their careers and benefit Schepens' son. These vague and conclusory allegations, which make no effort to differentiate the actions of each individual defendant from the actions of the group as a whole, simply "mimic[] the

---

[13] *Rode*, 845 F.2d at 1207. Scheing's argument that the personal involvement requirement applies only at the summary judgment stage is belied by the Supreme Court's decision in *Iqbal* and our decision in *Rode*—both of which clarify that dismissal is warranted at the pleading stage absent an adequate showing of personal involvement. *See Iqbal*, 556 U.S. at 676; *Rode*, 845 F.2d at 1197, 1207.

[14] Contrary to Scheing's contention, the District Court did not subject his pleading to "an improperly heightened plausibility analysis, or, in the alternative, require[] a pleaded *prima facie* case." Op. Br. at 19. The court applied the correct standard. *See* App. 3-12.

purported legal standards for liability" and therefore need not be accepted as true for purposes of our analysis.[15] Even if we consider these allegations, they are so devoid of particularity and "factual enhancement" that they do not permit us to infer that any of these defendants personally participated in the initiation of criminal proceedings against Scheing.[16] Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."[17]

**B.**

Scheing's malicious prosecution claim against Fountain fares no better because Scheing has failed to establish the initiation of criminal proceedings and the absence of probable cause—the first and third elements of his cause of action.[18]

First, Scheing has not adequately alleged, as he must, that Fountain initiated criminal proceedings against him.[19] Unlike a prosecutor, an arresting police officer can be held liable for malicious prosecution only if the officer "influenced or participated in

---

[15] *Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 74 (3d Cir. 2011); *see, e.g.*, *Santiago v. Warminster Twp.*, 629 F.3d 121, 132 (3d Cir. 2010) (explaining that "mere restatements of the elements of [a plaintiff's] supervisory liability claims . . . are not entitled to the assumption of truth").

[16] *Iqbal*, 556 U.S. at 678 (courts need not accept the truth of a complaint that tenders 'naked assertion[s]' devoid of 'further factual enhancement'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2009))); *see* App. 5, 9 n.5.

[17] *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 559.

[18] *See Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (en banc).

[19] Although the District Court assumed Scheing had pled this element, "we may affirm a judgment on any ground apparent from the record, even if the district court did not reach it." *Oss Nokalva, Inc. v. Eur. Space Agency*, 617 F.3d 756, 761 (3d Cir. 2010).

the decision to institute criminal proceedings."[20]  According to Scheing, Fountain's involvement in his failed prosecution was limited to the investigation, the decision to seek an arrest warrant, and the subsequent arrest; such an involvement is very different from the decision to bring charges or seek indictment.[21]  Scheing has not alleged that Fountain was involved in, let alone influenced or participated in, the initial decision to bring charges against Scheing.  Because the reasonableness of Fountain's arrest of Scheing is a wholly independent inquiry from the propriety of the separate decision to pursue criminal charges against him,[22] Scheing's failure to allege Fountain's involvement in the latter process is fatal to his claim.

Second, even if Scheing had sufficiently alleged that Fountain initiated criminal proceedings against him, he still has not established that Fountain did so without probable cause.  "Probable cause exists if there is a 'fair probability' that the person committed the crime at issue."[23]  Probable cause "requires more than mere suspicion," but does not require "evidence sufficient to prove guilt beyond a reasonable doubt."[24]  Nor does it "require that officers correctly resolve conflicting evidence or that their determinations of

---

[20] *Hasley v. Pfeiffer*, 750 F.3d 273, 297 & n.22 (3d Cir. 2014); *see Albright v. Oliver*, 510 U.S. 266, 279 n.5 (1994) (Ginsburg, J., concurring) ("The principal player in carrying out a prosecution . . . is not police officer but prosecutor.").

[21] *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 794 (3d Cir. 2000) (observing that determining whether a defendant had "probable cause to arrest" is an "independent inquiry" from whether there was "probable cause to pursue . . . prosecution").

[22] *See Merkle*, 211 F.3d at 794.

[23] *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016) (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)).

[24] *See Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017) (quotations omitted).

9

credibility, were, in retrospect, accurate."[25] Although not a toothless standard, it "is not a high bar" either.[26]

The allegations in the Second Amended Complaint, accepted as true, establish that Fountain acted with probable cause. In assessing probable cause, we must remain mindful of the fact that both a neutral, detached judicial officer and a grand jury separately determined that there was probable cause to believe that Scheing had committed a crime. Indeed, the existence of a facially valid warrant renders an arrest objectively reasonable unless "it is obvious that no reasonably competent officer would have concluded that a warrant should issue."[27] Scheing's pleading does not satisfy that exacting standard. Although Scheing attempts to rebut the presumption of probable cause by alleging that Fountain omitted material, exculpatory information relating to the soil testing from his affidavit,[28] those alleged omissions do not negate the existence of probable cause because a magistrate could have viewed that allegedly exculpatory information and still concluded that there was a fair probability that Scheing was in the process of defrauding the Vadalas.[29]

Moreover, in a malicious prosecution action, it is well-established that a "grand jury indictment . . . constitutes prima facie evidence of probable cause to prosecute," which will only be overcome "by evidence that the [indictment] was procured by fraud,

---

[25] *Dempsey*, 834 F.3d at 467 (quotations omitted).

[26] *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quotations omitted).

[27] *See, e.g.*, *Messerschmidt v. Millender*, 565 U.S. 535, 546-48 (2012).

[28] *Andrews v. Scuilli*, 853 F.3d 690, 697-99 (3d Cir. 2017).

[29] *Cf. Zugehoer v. State*, 980 A.2d 1007, 1011 (Del. 2009); *Mott v. State*, 9 A.3d 464, 467 (Del. 2010).

10

perjury or other corrupt means."[30]  Unable to overcome the presumption of probable cause that attached to the validly issued indictment and arrest warrant, Scheing has failed to state a claim of malicious prosecution against Fountain.

### III.

For the above reasons, we will affirm the judgment of the District Court.[31]

---

[30] *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989); *see Goodwin v. Conway*, 836 F.3d 321, 329 (3d Cir. 2016); *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 363 (3d Cir. 2003); *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 251 (3d Cir. 2001).
[31] In light of this conclusion, we need not address the defendants' alternative argument that they are entitled to qualified immunity.